Opinion filed April 20, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed April 20, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00026-CR 

                                                    __________

 

                                   JAMIE LYNN ALLRED, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 35th District Court

 

                                                          Brown
County, Texas

 

                                                Trial
Court Cause No. CR16-931

 



 

                                                                   O
P I N I O N

 

The jury convicted Jamie Lynn Allred of aggravated
sexual assault by intentionally or knowingly causing the penetration of the
anus of a child who was younger than 14 years of age.  The jury assessed appellant=s punishment at sixty years in prison
and assessed a $5,000 fine.  We affirm.

                                                               Background
Facts








Appellant lived with Brenda Theis and her two
children.  On April 5, 2003, Theis left
the house to purchase groceries.  One of
Theis=s
children, the victim, suffered from cerebral palsy.  The disease made it difficult for the victim
to maneuver; and, consequently, he usually crawled when he was at home.

When Theis left, the victim crawled into the
bedroom that appellant and Theis shared to play a video game.  The victim testified at trial that he was
kneeling at the edge of their bed when appellant entered the room and closed
the door. Appellant then pulled the victim=s
pants down and performed anal sex on him. 
The victim also described three other similar incidents involving
appellant.  The first occurred
approximately one year prior to trial in a motel and involved anal sex.   In the second, appellant rubbed his penis on
the victim while the victim was on a couch at the house.  In the third, appellant placed his mouth on
the victim=s penis.

Theis testified that two days before the April 5th
incident she had asked the victim if anyone had ever touched him because she
had heard that a boy who had been to their house was a registered sex
offender.  The victim told her no.  But, when she returned from the grocery
store, the victim reminded her of the question. 
He told her that appellant had touched him and described the four
incidents to her.

Appellant testified that Theis returned from
shopping shortly before noon.  He left
the house to check on his mother and to mow two lawns.  He returned to the house about 6:00 p.m.  When he arrived, Theis was changing the
victim=s
clothing and underwear.  Theis took her
children to a friend=s
house.  Theis returned and told appellant
that one of the children had accused him of touching them in a bad way.  She eventually told appellant that the victim
had accused him of performing anal sex.

 The victim
was taken to the hospital for an examination late that night.  The victim was examined by Dr. Lathon
Worthington, but no rape kit was performed because the victim had experienced a
bowel movement before coming to the hospital. 
Dr. Worthington noted no rips or tears during his physical examination
of the victim but testified that 75 to 80% of sexual assault cases leave no
evidence of physical trauma.

The victim was also questioned at the hospital by
investigators from the sheriff=s
office.  The investigators collected the
victim=s
underwear and sent it to the DPS lab for testing.  Two semen stains were found, and DNA analysis
was performed.  The test results
implicated appellant.








Appellant testified that he had masturbated in the
bathroom on the night of April 4, 2003.  
He cleaned himself with underwear located in a pile of dirty clothes in
the bathroom.  He testified that he
assumed Theis used this underwear when she dressed the victim to go to the
hospital.  Theis testified that there was
no dirty clothes pile in the bathroom, that the victim did not change his
clothes after the assault, and that the underwear tested was the same underwear
the victim was wearing at the time of the assault.

                                                                         Issues

Appellant challenges his conviction with two
issues.  Appellant contends that the
probative value of the extraneous acts testimony was outweighed by its
prejudicial effect and that its admission resulted in harm to him.

                                                              Standard
of Review

The trial court=s
decision to admit evidence of extraneous acts is reviewed using an abuse of
discretion analysis. Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim.
App. 1996); Montgomery v. State, 810 S.W.2d 372, 378-79 (Tex. Crim. App.
1991).  This requires that we uphold a
trial court=s
admissibility decision when that decision is within the zone of reasonable
disagreement.  Powell v. State, 63
S.W.3d 435, 438 (Tex. Crim. App. 2001). 
We may not reverse the trial court=s
decision if we simply disagree with it.  Id.

If we determine that the trial court erred by
admitting the evidence, we must then determine if the error affected appellant=s substantial rights.  Tex.
R. App. P. 44.2(b).  Substantial
rights are affected when the error had a substantial and injurious effect or
influence in determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). 
When assessing whether substantial rights have been affected, we review
the entire record.  O=Canas v. State, 140 S.W.3d 695, 698
(Tex. App.CDallas
2003, no pet.).

                        Was
Evidence of Extraneous Acts Admissible Under Article 38.37?

Evidence of an individual=s
bad character is generally not admissible to show that he acted in conformity
therewith.  See Montgomery, 810
S.W.2d at 386-88.  But, when a defendant
is charged with sexual assault of a minor under seventeen, evidence of extraneous
acts may be admissible under Tex. Code
Crim. Proc. Ann. art. 38.37 (Vernon Supp. 2005) which provides in
pertinent part:








Notwithstanding Rules 404 and 405, Texas Rules of Evidence,
evidence of other crimes, wrongs, or acts committed by the defendant against
the child who is the victim of the alleged offense shall be admitted for its
bearing on relevant matters, including:

 

(1) the state of mind of the defendant and the child; and

 

(2)
the previous and subsequent relationship between the defendant and the child.

 

Article 38.37, section 2. 
Article 38.37 makes otherwise irrelevant evidence relevant.  That evidence may, however, still be excluded
under Tex. R. Evid. 403 if its
probative value is substantially outweighed by its prejudicial value.  Walker v. State, 4 S.W.3d 98, 102-03
(Tex. App.CWaco
1999, pet. ref=d).

A.  Rule
403=s
Balancing Test

When a defendant objects to the admission of
extraneous acts because of unfair prejudice, the trial court must conduct a
Rule 403 balancing test.  Poole v.
State, 974 S.W.2d 892, 897 (Tex. App.CAustin
1998, pet. ref=d).  When the trial court denies an unfair
prejudice objection, we presume that it applied a balancing test and determined
that the evidence was admissible.  Walker,
4 S.W.3d at 103.

            The Texas Court of Criminal Appeals has noted that ARule 403 creates a presumption of
admissibility of all relevant evidence and authorizes a trial judge to exclude
such evidence only when there is a >clear
disparity between the degree of prejudice of the offered evidence and its
probative value.=@ Mozon v. State, 991 S.W.2d 841,
847 (Tex. Crim. App. 1999); see also Massey v. State, 933 S.W.2d 141,
154 (Tex. Crim. App. 1996)(because Rule 403 favors the admissibility of
relevant evidence, there is a presumption that relevant evidence will be more
probative than prejudicial).

To overcome this presumption, the objecting party
must show that the evidence is more than prejudicial.  It must show that the evidence is Aunfairly prejudicial,@ which requires Aan
undue tendency to suggest [a] decision on an improper basis, commonly, though
not necessarily, an emotional one.@  Rogers v. State, 991 S.W.2d 263, 266
(Tex. Crim. App. 1999).  To determine if
unfair prejudice exists, courts should consider:

(1)
how compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable B
a factor which is related to the strength of the evidence presented by the
proponent to show the defendant in fact committed the extraneous offense;








(2)
the potential the other offense evidence has to impress the jury Ain some irrational but nevertheless
indelible way@;

 

(3)
the time the proponent will need to develop the evidence, during which the jury
will be distracted from consideration of the indicted offense; [and]

 

(4)
the force of the proponent=s
need for this evidence to prove a fact of consequence.

 

Wyatt v. State, 23 S.W.3d 18, 26 (Tex.
Crim. App. 2000).

When the State attempted to ask the victim about
the other similar incidents, appellant objected, and the trial court excused
the jury.  The victim was questioned on
voir dire by both counsel, and he described each of the prior incidents.  Following the voir dire examination, the
trial court found that the evidence was relevant; that the evidence was
admissible under Article 38.37; that the evidence was admissible under Tex. R. Evid. 404(b) for determining
motive, opportunity, or plan; and, finally, that the probative value of the
testimony was not outweighed by its prejudicial effect.

Appellant requested a
limiting instruction.  The trial court
granted that request and instructed the jury:

You
are instructed that the following evidence concerning the Defendant=s committing other crimes, wrongs or
acts against the child who is the complainant of the alleged offense in the
Indictment, if any, may only be considered if, one, you believe beyond a
reasonable doubt that the Defendant committed such other crimes, wrongs or acts
against the child, if any; and two, even then, you may only consider such
evidence in determining its bearing on relevant matters including, A, the state
of mind of the Defendant and the child, and B, the previous and subsequent
relationship between the Defendant and the child, and C, the motive,
opportunity and plan of the Defendant, if any, in connection with the offense
alleged against him in the Indictment. 
You are not to consider this evidence for any other purpose.  

 

The victim then testified to the jury about
each of the extraneous acts. 

Appellant argues that the trial court abused its
discretion by admitting this evidence because the victim could not provide an
accurate time frame and, thus, his testimony did not make a compelling case
that the indicted offense was more probable. 
Further, appellant contends that the evidence created a substantial
danger that the jury based its decision on its revulsion for the alleged acts
and that the State did not need the evidence to establish appellant=s state of mind.








B.  The
Victim=s
Credibility

When conducting a Rule 403 balancing test, trial
courts should consider the strength of the evidence to show that the defendant
did in fact commit the extraneous offense. 
Wyatt, 23 S.W.3d at 26. 
Appellant argues that the victim=s
inability to provide an accurate time frame for the extraneous events compels
the evidence=s
exclusion.  The victim testified that the
first event occurred approximately one year prior to trial while the family was
on a trip to the Texas Youth Center in Vernon to see his brother.  The victim could not remember when the other
two events occurred, except that they happened after the trip to Vernon and before
the April 5th incident.

We cannot say that this alone demonstrates an
abuse of discretion.  The trial court was
much better positioned to determine if the victim=s
testimony was sufficiently credible to present to the jury.  The victim was fourteen years old at the time
of trial and testified about matters which were obviously difficult to
discuss.  He provided a location for
three of the four incidents and a specific description of what occurred each
time.  This specificity was a sufficient
basis for the trial court to determine that the testimony was admissible.

C.  The
Evidence=s
Potential To Improperly Influence The Jury

Appellant points out that sexual misconduct
allegations in cases involving children are inherently inflammatory.  See Bishop v. State, 869 S.W.2d 342,
346 (Tex. Crim. App. 1993)(evidence of sexual misconduct has long been
considered inherently inflammatory); Montgomery, 810 S.W.2d at 397
(cautioning against the potential impact extraneous acts evidence can have in a
case involving alleged indecency with a child). 
Appellant argues that, because of the sympathetic victim and the heinous
acts with which he was accused, there was a greater concern in this case that
he would be convicted simply because of the accusations.








The victim will almost always present a more
sympathetic appearance than the accused in a case involving allegations of
sexual misconduct toward a minor.  That
is particulary true in this case given the victim=s
youth and medical condition.  Conversely,
it is often difficult to believe allegations that a parent or guardian sexually
assaulted their child or a child in their care because the alleged conduct is
so abnormal.  It is the presence of this
paradox that courts have relied upon as a basis for the admission of extraneous
acts evidence.  Justice Davis, writing
for the Austin Court of Appeals, noted that evidence of extraneous sexual
conduct explains how Aa
person in a position of authority, custody, or care of a young child has
developed an unnatural attitude and relationship toward that child to explain
the charged act C an act
that would otherwise seem wholly illogical and implausible to the average
juror.@  Ernst v. State, 971 S.W.2d 698, 700
(Tex. App.CAustin
1998, no pet.).  In Ernst, the
court affirmed the admission of the victim=s
testimony about other incidents in which her father sexually assaulted her,
made numerous sexual statements to her, and asked her about the possibility of
having sex with one of her friends. 
These acts started when the victim was ten and increased in frequency
when the victim=s mother
was hospitalized for an indefinite period with a mental illness.  Id. at 699.[1]

We believe a similar situation was present in this
case.  Article 38.37 allows evidence of
extraneous acts to show the accused=s
state of mind and the nature of the relationship between the victim and the
accused.  Id. at 701.  The State was entitled to introduce the
extraneous acts to help the jury understand how an otherwise illogical crime
could take place. Cf. McCulloch v. State, 39 S.W.3d 678, 681 (Tex. App.CBeaumont 2001, pet. ref=d)(evidence of extraneous acts
admissible to prevent a jury from drawing false impression that the
relationship between the victim and accused was a healthy one and, thus,
concluding the alleged assault was unlikely to have occurred). 

The alleged extraneous acts were potentially
inflammatory; but, the trial court gave a limiting instruction, and the
testimony helped the jury by placing the charged act in context.  The alleged extraneous acts were heinous, but
there was not a clear disparity between the degree of their prejudice and their
probative value.  We cannot, therefore,
say the trial court abused its discretion because of the potential inflammatory
nature of the evidence.

D.  The
State=s Need
For The Evidence of Extraneous Acts








Appellant next argues that the State did not need
the extraneous acts evidence to establish his state of mind because the victim
testified in detail about the events of April 5, 2003, and the State had
evidence that appellant=s
semen was found on the victim=s
underwear.  Appellant also argues that
the State had ample evidence of the previous and subsequent relationship
between himself and the victim, that there was no question about opportunity,
and that the State had other evidence to bolster the victim=s credibility.  

The State points to testimony from appellant and
his sister to establish a need for the extraneous acts evidence.  That testimony, however, came after
the victim testified.  Appellant properly
objected to the extraneous acts evidence. 
When that objection was overruled, he was entitled to offer a response
without waiving his original objection.  

The State=s
need for the testimony involves consideration of the record at the time of the
offer and the purposes for which Article 38.37 allows its consideration.  In appellant=s
opening statement, he indicated that the victim=s
credibility would be an issue, asked the jury to consider whether the victim
had a motive to make up the allegation, and indicated that the jury would hear
testimony about a possible motive.  He
also indicated that the victim=s
credibility was important because the doctor found no evidence of penetration.

The jury=s
determination of a victim=s
credibility in sexual assault cases against a minor can often implicate events
well before and after the indicted offense. 
The Beaumont Court noted in McCulloch, 39 S.W.3d at 678, that the
absence of evidence of extraneous acts can harm the victim=s credibility because the jury may
otherwise be misled to believe that the victim and accused had a healthy
relationship and draw inferences from that belief.  Because appellant had lived with the victim
and his family for five years, the trial court could reasonably conclude that
the State needed the extraneous acts evidence to support the victim=s credibility by placing the events in
context. 

Similarly, this testimony would help establish
appellant=s state
of mind.  Appellant argues that the State
had other evidence to establish that he committed the offense for sexual
gratification.  This is correct, but the
state of mind inquiry is much broader than that because the more narrow
question of C for what
immediate purpose did appellant commit the alleged physical act? C is subsumed within the preliminary
questions of why this child and why now? 
Evidence of other extraneous acts between appellant and the victim
provided evidence of appellant=s
intent, motivation, and ability to commit the offense for which he was
charged.  








We find that the trial court could reasonably
conclude the State needed this evidence and, therefore, did not err when it
admitted the victim=s
testimony about extraneous acts. 
Appellant=s first
issue is overrued.  This holding makes it
unnecessary for us to conduct a harm analysis and, therefore, we do not reach
appellant=s second
issue.  Tex.
R. App. P. 47.1.

                                                                     Conclusion

The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

April 20, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











[1]The victim=s
testimony described three extraneous acts. Texas Courts have affirmed the
admission of evidence of substantially greater numbers of equally reprehensible
extraneous sexual assaults committed by one family member against another than
was present in this case.  See
McCulloch, 39 S.W.3d at 682 (testimony that the victim=s step-father sexually assaulted her from once a month
to once a week over a period of several years was admissible); Hinojosa v.
State, 995 S.W.2d 955, 958 (Tex. App.CHouston
[14th Dist.] 1999, no pet.)(testimony that the child victim was assaulted by
her brother once a week for ten years was admissible); Poole, 974 at 898
(the prejudicial effect of testimony that the child victim was sexually
assaulted over 750 times by her father during a four-year period did not
outweigh the probative value of that testimony).